IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


GUARANTY TOWERS, LLC,                  :
          Plaintiff
                                       :

          vs.                          :   CIVIL NO. 1:CV-07-0554

                                       :

CELLCO PARTNERSHIP d/b/a
Verizon Wireless,                      :
WISCONISCO FIRE ENGINE CO.
NO. 1, INC.,                           :
          Defendants


*M E M O R A N D U M*


I.    *Introduction*

          Plaintiff, Guaranty Towers, LLC, filed this action

against defendants, Cellco Partnership, d/b/a Verizon Wireless

(Cellco), and Wiconisco Fire Engine Co. No. 1, Inc. (Wiconisco).

Plaintiff leased land from Wiconisco on which it built a

communications tower, leasing space on the tower to third

parties. The case arises from Wiconisco's decision about two

years after making the lease with Guaranty Towers to lease

another portion of its property to Cellco so that Cellco could

construct its own communications tower, giving Plaintiff

competition.

          Invoking our diversity jurisdiction, Plaintiff has

made the following state-law claims. Against Wiconisco,

Plaintiff makes a claim for breach of contract (count I),

alleging that the lease between the two prohibited Wiconisco

from also leasing to a competitor of Plaintiff. Against Cellco,
Plaintiff makes: (1) a claim for tortious interference with
business relationships (count II), alleging that Cellco
intentionally induced Wiconisco to breach its contract with
Plaintiff; and (2) a claim that Cellco intentionally or
negligently made misrepresentations to Plaintiff (count III).
Against both Defendants, Plaintiff makes: (1) a claim that they
conspired to interfere with Plaintiff's business relations
(count IV); (2) a claim for conversion, alleging that they
interfered with Plaintiff's "right of possession" (count V); and
(3) a claim for punitive damages (count VI).[1]

      We are considering each defendant's motion to dismiss
under Fed. R. Civ. P. 12(b)(6).


II.   *Standard of Review*

      In considering a motion to dismiss, we must accept as
true the factual allegations in the complaint and construe any
inferences to be drawn from the allegations in Plaintiff's
favor.  *See Morrison v. Madison Dearborn Capital Partners III
L.P.*, 463 F.3d 312, 314 (3d Cir. 2006). The court is not limited
to evaluating the complaint alone. It may consider documents
that form the basis of a claim. *Lum v. Bank of Am.*, 361 F.3d
217, 221 n.3 (3d Cir. 2004). It may also consider "documents
whose contents are alleged in the complaint and whose

---

[1] A typo in the complaint lists count VI as count IV.

2

authenticity no party questions," even though they "are not physically attached to the pleading . . . ." *Pryor v. National Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002).

A complaint has to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, ____ U.S. ____, ____, 127 S.Ct. 1955, 1974, 167 L.Ed.2d. 929 (2007)(rejecting the "no set of facts" language from *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). Detailed factual allegations are not required, *id*. at ____, 127 S.Ct. at 1964-65; *Pryor*, *supra,* 288 F.3d at 564, only a "short and plain statement" showing the right to relief. *Pryor*, *supra,* 288 F.3d at 564 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) and quoting Fed. R. Civ. P. 8(a)(2)).

With this standard in mind, we set forth the background to this litigation, as Plaintiff alleges it.


III. *Background*

Plaintiff, Guaranty Towers, builds and manages "towers for use by personal communications services, cellular, radio and paging carriers." (Compl. ¶ 5.) On or about March 24, 2000, it entered into a lease agreement with defendant Wiconisco, leasing a portion of Defendant's property in Wiconisco, Pennsylvania, so that it could build and operate a communications tower on the leased property. (*Id.* ¶ 6.) "In reliance upon its Lease

3

Agreement with Wiconisco," Plaintiff did build the communications tower, at a cost in excess of $150,000. (*Id.* ¶ 8.) The lease was for an initial term of nineteen years,(doc. 15-3, Cellco's Mot. to Dismiss, Ex. B, ¶ 3), and could be renewed at Plaintiff's option for four additional twenty-year terms. (*Id.* ¶ 4).[2]

Plaintiff alleges that, as part of the lease, Wiconisco "agreed that it would not lease any of its property to parties that were competitors of the Plaintiff nor to (sic) do anything that would unreasonably interfere with Plaintiff's use of the property for its business of leasing space on its communication tower." (Compl. ¶ 7.) The language of the lease on which this allegation is based reads as follows:

> LESSOR covenants that LESSEE on paying the rent and performing the covenants shall peaceably and quietly have, hold and enjoy the leased Property without hindrance on the part of the LESSOR or any person or persons claiming by, through or under the LESSOR, for the term herein leased, including any renewal term; except that LESSOR may cultivate such property for any purpose, except for leasing to parties considered to be competitors of LESSEE, and does not unreasonably interfere with LESSEE'S use of the Property.

(Cellco's Mot. to Dismiss, Ex. B, ¶ 13.)

---

[2] Plaintiff did not attach a copy of the lease to its complaint. Cellco attached it to its motion to dismiss. As noted, we can consider a document on a motion to dismiss when it forms the basis of a claim or when its contents are alleged in the complaint and its genuineness is not disputed.

In August of 2001, defendant Cellco, aware of
Plaintiff's lease with Wiconisco, "expressed an interest in
leasing space on Plaintiff's tower for the installation of its
antennas and equipment." (Compl. ¶ 10.) "Cellco, with permission
of the Plaintiff, conducted tests at the . . . site to determine
if the site would provide the necessary coverage and the support
of antennas for its business." (*Id.* ¶ 11.) However, after
conducting the tests, Cellco told Plaintiff "that it was not
interested in leasing space on Plaintiff's communications tower,
even though the tests showed that this was an excellent
location." (*Id.* ¶ 12.)

Instead, on or about March 21, 2002, without
Plaintiff's knowledge, Cellco entered into a lease agreement
with Wiconisco, allowing Cellco to erect its own communications
tower on the "property immediately adjacent to Plaintiff's
tower." (*Id.* ¶ 13.) Defendants knew this was a violation of the
contract between Plaintiff and Wiconisco. (*Id.*) "Plaintiff did
not learn of the existence of the Cellco tower until October of
2006 when it discovered that a client that it had been
negotiating with for lease of space on its tower had signed a
contract to lease space on the Cellco tower." (*Id.* ¶ 14.) As a
result of Wiconisco's breach of contract and "Cellco's tortuous
interference with Plaintiff's contractual arrangements,"
Plaintiff alleges it lost business and has suffered damages in
excess of $75,000.00. (*Id.* ¶ 15.)

As noted, count I is for breach of contract against Wiconisco, alleging that the lease between the two prohibited Wiconisco from also leasing to a competitor of Plaintiff; count II is against Cellco for tortious interference with business relationships, alleging that Cellco, knowing of the contract, interfered with Plaintiff's business relations by intentionally inducing Wiconisco to breach its contract with Plaintiff (Compl. ¶ 19); count III is against Cellco, alleging that it intentionally or negligently made misrepresentations to Plaintiff; count IV is against both Defendants, alleging a civil conspiracy to interfere with Plaintiff's business relations (count IV); count V is against both defendants for conversion, alleging that they interfered with Plaintiff's "right of possession" (count V); and count VI is against both defendants for punitive damages.

IV.   *Discussion*

   A.   *Breach-of-Contract Claim in Count I Against Wiconisco*

Defendant Wiconisco moves to dismiss the breach-of-contract claim against it by arguing that the lease does not absolutely prohibit Wiconisco from leasing to competitors of Plaintiff, only from leasing the property subject to the lease to competitors of Plaintiff. Wiconisco remains free to lease other areas of its property to Plaintiff's competitors.

6

For this interpretation, it relies on language in paragraph 13 guaranteeing Plaintiff the quiet enjoyment of "the leased property" with the exception that Wiconisco "may cultivate such property," and with the further exception of not "leasing to parties considered to be competitors of LESSEE." In Defendant's view, this language ties the prohibition on leasing to competitors to the "leased property," leaving it free to lease other areas of its land to Plaintiff's competitors. Wiconisco also relies on other provisions in the lease which it says support limiting  paragraph 13's prohibition on leasing to Plaintiff's competitors to the land leased to Plaintiff. Hence, since Plaintiff admits in its complaint that Wiconisco leased to Cellco the land "immediately adjacent to Plaintiff's tower" (Compl. ¶ 13), not the portion of its land leased to Plaintiff, the breach of contract claim fails.

In opposition, Plaintiff contends that Wiconisco violated that part of paragraph 13 prohibiting it from "unreasonably interfering] with [its] "use of the property." Guaranty Towers maintains that leasing the adjacent area to its competitor directly interfered with its use of the leased property in violation of paragraph 13.

In Pennsylvania, a lease is a contract and is controlled by principles of contract law. *Willison v. Consolidation Coal Co.*, 536 Pa. 49, 54, 637 A.2d 979, 982 (1994); *Charles D. Stein Revocable Trust v. General Felt Indus.,*

*Inc.*, 749 A.2d 978, 980 (Pa. Super. 2000). A lease is construed in accord with the plain meaning of the language used, not with the parties' silent intentions. *Willison*, 536 Pa. at 54, 637 A.2d at 982. When the words are clear and unambiguous, the intent of the parties is determined by the express language of the agreement. *Id.*, 637 A.2d at 982; *Charles D. Stein Revocable Trust*, 749 A.2d at 980. "'[The court will adopt an interpretation which under all circumstances ascribes the most reasonable, probable, and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished.'" *Id.* (quoted case omitted).[3]

     At this stage of the proceedings, even though Plaintiff does not oppose the argument, we hesitate to accept defendant Wiconisco's interpretation of the relevant language from paragraph 13, which would mean that the language seemingly was intended to provide unnecessary protection against Wiconisco's leasing of land already subject to Plaintiff's right of possession. In any event, we need not engage Defendant's argument. We will deny the motion to dismiss the contract claim because Defendant does not address Guaranty Towers' reliance on

---

[3] The parties have not addressed the choice-of-law issue. The lease provides that it "shall be governed, interpreted, construed and regulated by the laws of the State in which the Property is located." (Doc. 15-3, Cellco's Mot. to Dismiss, Ex. B, ¶ 16.) Hence, we follow Pennsylvania law. We note that on the breach-of-contract issue, defendant Wiconisco cites only *Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97 (5th Cir. 1974), a case under federal securities law dealing with misleading representations in a bond prospectus. Parenthetically, we also note that the parties rely on Pennsylvania law on the tort claims.

the provision in paragraph 13 that Wiconisco "not unreasonably interfere" with Plaintiff's use of the leased property. (Defendant filed no reply brief.) This broadly written prohibition may or may not apply here, but in the absence of a defense argument why it does not, we cannot dismiss the contract claim.

      B.   *The Claim Against Cellco in Count II*
           *for Tortious Interference with Business*
           *Relationships*

In count II, Plaintiff makes a claim for tortious interference with business relationships, but as Plaintiff has briefed it, its claim is a bit more specific, one for tortious interference with a contractual relationship, as it relies upon *Triffin v. Janssen*, 426 Pa. Super. 57, 626 A.2d 571 (1993), for the elements of the claim. As stated in *Triffin*:

> The four elements of a cause of action for intentional interference with contractual relations are as follows: (1) the existence of a contractual relationship; (2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship; (3) the absence of a privilege or justification for such interference; and (4) damages resulting from the defendant's conduct.

*Id.* at 63, 626 A.2d at 574 (footnote omitted). *See also Breon v. Waypoint Ins. Group*, 2007 WL 1575225, at *3 (M.D. Pa. May 31, 2007).

Defendant argues that the claim is deficient because it fails to allege the last three elements of the cause of

action. First, it does not allege that Wiconisco intended to harm Plaintiff. Second, it does not allege the absence of a privilege or justification for the interference. Third, it does not allege any damages because Wiconisco did not breach the contract by leasing land to Cellco as Plaintiff's lease did not prohibit it from doing so, as long the lease included no part of the premises leased to Plaintiff.

We can take the first two arguments together, dealing with the second and third elements of the claim. "In interpreting these elements, Pennsylvania courts have expressly adopted the Restatement (Second) of Torts, which focuses on whether the alleged tortfeasor engaged in "'improper conduct,'" *Breon*, *supra*, 2007 WL 1575225, at *3, more specifically, Restatement (Second) of Torts § 767.[4] But that is a "fact-sensitive inquiry" usually undertaken at the summary-judgment stage. *Id.* At the pleading stage, it is sufficient to allege that "the defendant 'had a knowing and purposeful intent to interfere' with a contract." *Id.* (quoting *Odyssey Waste Servs., LLC v. BFI Waste Sys. of N. Am., Inc.,* 2005 WL 3110826, at *7 (E.D. Pa. Nov. 18, 2005)). In the instant case, Plaintiff alleges in paragraph 19 of its complaint that Cellco, knowing of Plaintiff's contract with Wiconisco, interfered with Plaintiff's business relations by intentionally inducing Wiconisco to breach

---

[4] Section 767 lists certain factors we need not detail here.

the contract. This allegation is sufficient to withstand a motion to dismiss.

As to Cellco's third argument, that Plaintiff did not plead damages, this argument is based on the contention that Plaintiff has failed to state a breach-of-contract claim against Wiconisco. However, we have already decided that we cannot dismiss the contract claim. On that basis, we must reject Cellco's argument.

> C.  *The Claim Against Cellco in Count III*
> *that It Intentionally or Negligently*
> *Made Misrepresentations to Plaintiff*

In Count III, captioning the claim as one for negligent misrepresentation, and incorporating by reference the previous nineteen paragraphs of the complaint, Plaintiff alleges that "Cellco intentionally made misrepresentations to the Plaintiff, upon which Plaintiff justifiably relied, and as a result thereof, Plaintiff sustained substantial damages." (Compl. ¶ 21.)

Cellco moves to dismiss this claim by arguing that it violates Fed. R. Civ. P. 9(b). In relevant part, Rule 9(b) requires allegations of fraud to be pled "with particularity." Defendant points out that count III fails to set forth the specific nature of the misrepresentations, when they were made, or to whom. *See Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004) (Rule 9(b) can be satisfied by "'date, place or time'" of the fraud" or some "alternative means of injecting precision and

11

some measure of substantiation into the fraud allegations"). Defendant Cellco also notes that the count does not even make it clear whether Plaintiff is making an intentional misrepresentation claim or a negligent one, or both.

Upon reviewing Plaintiff's opposition to this argument, while we agree that Plaintiff's pleading of count III is deficient under Rule 9(b), at least as to any intentional misrepresentation claim, *see TruePosition, Inc. v. Sunon, Inc.*, 2006 WL 1451496, at *4 (E.D. Pa. May 25, 2006)(applying Rule 9(b) to a fraudulent inducement claim but not to a negligent misrepresentation claim), we need not address the pleading issue because we agree with Defendant's reply-brief argument that Plaintiff cannot allege any damages that were caused by any intentional or negligent misrepresentation.

In its opposition brief, Guaranty Towers fleshes out its claims. It asserts that Cellco "knew or ought to have known" that it was not going to be leasing space on Plaintiff's tower, but misrepresented that it was going to do so. According to Plaintiff, the misrepresentation improperly induced it to allow Cellco to conduct testing at Plaintiff's site, testing that allowed Cellco to decide it would build its own communications tower on Wiconisco's land. Cellco then "induced Defendant Wiconisco to breach its contract with Plaintiff, allowing Defendant Cellco to build a communications tower immediately

adjacent to Plaintiff's tower causing Plaintiff harm." (Doc. 19, Pl.'s Br. in Opp'n, p. 8).

There are four elements to a negligent misrepresentation claim. The fourth element requires that the misrepresentation must have caused injury to the plaintiff. As stated by the Pennsylvania Supreme Court: "Negligent misrepresentation requires proof of: (1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and; (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." *Bortz v. Noon*, 556 Pa. 489, 500, 729 A.2d 555, 561 (1999); *see also Brandow Chrysler Jeep Co. v. Datascan Technologies*, 2007 WL 1725255, at *5 (E.D. Pa. June 13, 2007)(quoting *Bortz*).

Here, from Plaintiff's argument in its brief, its damages could not have come from any misrepresentation by Cellco. Before any damages could have occurred, Cellco had to induce Wiconisco to allegedly breach its lease with Plaintiff by leasing a portion of its land to Cellco. The damages, if any, thus would have flowed from Cellco's operation of its own communications tower. We will therefore dismiss count III.

13

D.   *The Claim in Count IV Against Both Cellco
     and Wiconisco That They Conspired to
     Interfere with Plaintiff's Business Relations*

In count IV, incorporating by reference the previous
twenty-one paragraphs of the complaint, Plaintiff alleges that
"Defendants conspired to interfere with the Plaintiff's business
relations, thereby causing substantial damages to the
Plaintiff." (Compl. ¶ 22).

Among other arguments, both defendants argue in moving
to dismiss this count that it fails to allege an essential
element of a civil conspiracy claim, that the defendants acted
solely with the intent to injure Plaintiff.

We agree with this argument, on the basis of
Plaintiff's presentation of this claim in its opposition briefs
to both motions, which explains the claim in detail. According
to Plaintiff:

> Defendants conspired to interfere with
> Plaintiff's business relations so that
> Defendant Wiconisco could earn more revenue
> through an additional lease and Defendant
> Cellco could erect a communications tower of
> its own eliminating the need to lease space
> on Plaintiff's tower and allowing it to
> lease space to others whereby it could
> generate revenue it could not have otherwise
> generated had they leased space from the
> Plaintiff. The lease agreement entered into
> by Defendant Wiconisco with Defendant Cellco
> directly and unreasonably interfered with
> Plaintiff's use of the property and current
> and prospective business relations as a
> result of which Plaintiff was not able to
> lease space on his communications tower to
> Defendant Cellco and others.

(Doc. 19, Pl.'s Br. in Opp'n to Cellco's motion, pp. 9-10); doc.12, Pl.'s Br. in Opp'n to Wiconisco's motion, p. 9).

In Pennsylvania, a claim for civil conspiracy requires the plaintiff to show "that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means." *Thompson Coal Co. v. Pike Coal Co.,* 488 Pa. 198, 211, 412 A.2d 466, 472 (1979). "Proof of malice, i. e., an intent to injure, is essential in proof of a conspiracy." *Id.*, 412 A.2d at 472 (citation omitted); *Skipworth v. Lead Indus. Ass'n*, 547 Pa. 224, 235, 690 A.2d 169, 174 (1997). The intent must be without justification, *Thompson Coal Co.*, 488 Pa. at 211, 412 A.2d at 472, so only conduct intended "solely to injure" the plaintiff is actionable. *Id.*, 412 A.2d at 472.

Here, as quoted above, Plaintiff's theory of the civil conspiracy claim is that both defendants acted to obtain more revenue, Wiconisco from the additional lease and Cellco from not having to lease cell-tower space from Plaintiff and from leasing space on its own cell tower to third parties. These allegations are fatal to a civil conspiracy claim under Pennsylvania law. *See Thompson Coal Co.*, 488 Pa. at 211, 412 A.2d at 472 (civil conspiracy claim against the lawyer defendant failed when "no facts of record . . . indicate[d] that [he] acted solely to injure appellants" and when "many facts . . . indicate[d] that [he] acted solely to advance the legitimate business interests

of his client and to advance his own interests"); *Rutherfoord v. Presbyterian-University Hosp.*, 417 Pa. Super. 316, 334, 612 A.2d 500, 509 (1992)(ex-employee's civil conspiracy claim failed when he acknowledged he lost his employment because the defendant wanted to terminate as many employees as it could in his department, thereby failing to show specific intent to injure the plaintiff); *WM High Yield Fund v. O'Hanlon*, 2005 WL 1017811, at *14 (E.D. Pa. April 29, 2005)(civil conspiracy claim fails when the plaintiffs acknowledged that the defendants' intent was to "raise new capital to fund [the] growth of a nonparty corporation, thereby negating "malice solely to injure Plaintiffs); *Giannone v. Ayne Institute*, 290 F. Supp. 2d 553, 570 n.20 (E.D. Pa. 2003)(civil conspiracy claim fails when based on Plaintiffs' belief that defendants "'were more interested in generating revenue and improving their corporate and personal earnings than in the welfare of [the minor plaintiff]'" because "this allegation falls short of the 'intent to injure'" requirement of Pennsylvania law).

We will thus dismiss the civil conspiracy claim.

E.   *The Claim in Count V Against Both Cellco and Wiconisco for Conversion*

In count V, incorporating by reference the previous twenty-three paragraphs of the complaint, Plaintiff alleges that "Defendants interfered with the Plaintiff's right of possession . . . " (Compl. ¶ 25).

"Conversion is a tort by which the defendant deprives the plaintiff of his right to a chattel or interferes with the plaintiff's use or possession of a chattel without the plaintiff's consent and without lawful justification." *Pittsburgh Constr. Co. v. Griffith*, 834 A.2d 572, 582 (Pa. Super. 2003)(citing *Chrysler Credit Corp. v. Smith,* 434 Pa. Super. 429, 643 A.2d 1098, 1100 (1994)).

Cellco moves to dismiss this claim by arguing that conversion has not been extended to property rights unconnected to physical property, citing *Northcraft v. Edward C. Michener Associates*, 319 Pa. Super. 432, 441, 466 A.2d 620, 625 (1983), and *Famology.com Inc. v. Perot Sys. Corp.*, 158 F. Supp. 2d 589, 591 (E.D. Pa. 2001). Defendant adds that it is unclear from the complaint what property right of Plaintiff was deprived or interfered with. In opposition, Plaintiff contends that its conversion claim is proper because it alleges that Defendants "deprived Plaintiff of its use or possession of [its] property" "by tortiously interfering with Plaintiff's prospective business relations." (Doc. 19, Pl.'s Br. in Opp'n, p. 10). It cites in support *Chrysler Credit Corp.*, *supra*, a case involving an automobile, and where the conversion claim was rejected.

Like Cellco, we are unsure of the exact nature of the property that Plaintiff makes the subject of its conversion claim. It has also not vigorously briefed the claim, but we think reliance on tortious interference with prospective

17

contractual relations takes the claim outside the scope of conversion. *See Northcraft*, *supra*, 310 Pa. Super. at 441, 466 A.2d at 625 (observing the adequacy of other remedies when intangible rights are involved).

We will therefore dismiss the conversion claim.[5]

F.   *The Claim in Count VI for Punitive Damages*

Count VI sets forth a claim for punitive damages, based on the defendants' "malicious[ ]" "intent to harm" Plaintiff. (Compl. ¶ 26.) Both defendants move to dismiss this count on the basis that Pennsylvania does not recognize a separate cause of action for punitive damages. In opposition, Plaintiff asserts that it did not intend to plead punitive damages as a separate cause of action but that it is entitled to such damages as part of its claim for tortious interference with contractual relations in count II.

Defendants are correct in stating that punitive damages are not a separate cause of action in Pennsylvania. *See Kirkbride v. Lisbon Contractors, Inc.,* 521 Pa. 97, 555 A.2d 800, 802 (1989); *DiGregorio v. Keystone Health Plan East*, 840 A.2d 361, 370 (Pa. Super. 2003). But we see no point in requiring

---

[5] In moving to dismiss this claim, Wiconisco argues it is barred by the "gist of the action" doctrine, which prohibits a tort claim "where the duties allegedly breached were created and grounded in the contract itself . . . ." *Pittsburgh Constr. Co.*, *supra*, 834 A.2d at 582(quoting *eToll, Inc. v. Elias/Savion Advertising, Inc.,* 811 A.2d 10, 18 (Pa. Super. 2002)). Wiconisco asserts that the conversion claim is based on contractual obligations arising from the lease agreement. We need not address this argument as we have disposed of this claim on the basis of Cellco's argument.

Plaintiff to file an amended complaint to reassert its claim for punitive damages in a prayer for relief contingent upon Plaintiff's success on count II (which survives Cellco's motion to dismiss). With the understanding that punitive damages will only be recoverable if Plaintiff succeeds on count II (and Plaintiff otherwise satisfies the requirement for a punitive damages claim), we will permit count VI to proceed.

V.   *Conclusion*

Based on our analysis, the following claims remain in the case: (1) the claim in count I against Wiconisco for breach of contract; (2) the claim in count II against Cellco for tortious interference with contractual relationships; and (3) the claim for punitive damages in count VI, with the understanding that punitive damages will only be recoverable if Plaintiff succeeds on count II and Plaintiff otherwise satisfies the requirement for a punitive damages claim. The following claims are dismissed: (1) the claim in count III against Cellco for intentional or negligent misrepresentations; (2) the claim in count IV against both Defendants for civil conspiracy; and (3) the claim in count V against both defendants for conversion.

We will issue an appropriate order.

/s/William W. Caldwell
William W. Caldwell
United States District Judge

Date: September 6, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


GUARANTY TOWERS, LLC,                :
       Plaintiff
                                     :

       vs.                           :   CIVIL NO. 1:CV-07-0554

                                     :
CELLCO PARTNERSHIP d/b/a
Verizon Wireless,                    :
WISCONISCO FIRE ENGINE CO.
NO. 1, INC.,                         :
       Defendants


*O R D E R*


      AND NOW, this 6th day of September, 2007, it is

ordered that:

        1.  Defendant Wiconisco's motion (doc. 7)
      to dismiss and defendant Cellco's motion
      (doc. 15) to dismiss are granted in part as
      follows.

        2.  The following claims are dismissed:
      (a) the claim in count III against Cellco
      for intentional or negligent
      misrepresentations; (b) the claim in count
      IV against both Defendants for civil
      conspiracy; and (c) the claim in count V
      against both defendants for conversion.

        3.  In all other respects, the motions
      are denied.


                          /s/William W. Caldwell
                          William W. Caldwell
                          United States District Judge